Patricia L. PRATT, Plaintiff–Appellee, Cross–Appellant,

v.

NATIONAL DISTILLERS & CHEMICAL CORPORATION, Defendant–Appellant, Cross–Appellee.

Nos. 86–3971, 86–3972.

United States Court of Appeals, Sixth Circuit.

Argued Oct. 5, 1987.

Decided Aug. 1, 1988.

Rehearing and Rehearing En Banc Denied Sept. 19, 1988.

Mark A. Vander Laan (argued), Patrick D. Lane, Dinsmore & Shohl, Cincinnati, Ohio, for defendant-appellant, cross-appellee.

R. Guy Taft (argued), Steer, Strauss, White & Tobias, Cincinnati, Ohio, for plaintiff-appellee, cross-appellant.

Before KEITH and MILBURN, Circuit Judges, and EDWARDS, Senior Circuit Judge.

KEITH, Circuit Judge:

Defendant National Distiller & Chemical Corporation, d/b/a Emery Industries ("Emery"), appeals and plaintiff Patricia Pratt cross-appeals the judgment notwithstanding the verdict for defendant on the issue of damages. For the reasons set forth below, we REVERSE the district court's judgment *n.o.v.*, and REINSTATE plaintiff's damages award, with costs and interest. We AFFIRM the liability portion of the verdict below.

## I.

### PROCEDURAL HISTORY

This diversity action is based on Ohio law. Mrs. Pratt brought suit in the United States District Court, Southern District of Ohio, to recover compensatory and punitive damages for injuries to, and the death of, her husband, Paul Pratt. On February 18, 1982, Mr. Pratt sustained second and third degree burns over eighty percent of his body and incurred various shrapnel injuries in an explosion and flash fire at Emery's chemical plant. Mr. Pratt died after surviving for thirty-seven days in the burns unit of Cincinnati Medical Center.

The jury trial was bifurcated on the issues of liability and damages. The liability phase began on January 6, 1986. On the third day, a mistrial was declared,[1] and the trial began again on February 10, 1986. The liability phase of the retrial resulted in a verdict for plaintiff. The damages phase began on March 3, 1986, and resulted in a verdict for plaintiff on March 5, 1986, in the amount of $1,003,028 in compensatory damages and $100,000 in punitive damages. After the verdict was rendered, but while post trial motions were pending, the Ohio legislature passed a new workers' compensation statute, Ohio Rev.Code Ann. § 4121.80, which relegates to a newly-created Ohio Industrial Commission all damages determinations in intentional tort actions between employers and employees.[2] That statute became effective on August 22, 1986. On September 19, 1986, the trial court below vacated Mrs. Pratt's damages award and referred her damages determination to the Ohio Industrial Commission, pursuant to the new statute.

On October 20, 1986, plaintiff and defendant each filed a timely appeal. By agreement of the parties, defendant was designated as appellant, and plaintiff was designated as appellee/cross-appellant.

## II.

### FACTS

Defendant Emery operates a chemical manufacturing plant in Cincinnati. On February 18, 1982, a chemical press exploded, eventually resulting in the death of Paul Pratt, plaintiff's husband. The chemical that was under manufacture at the time is called "9058," a non-polymeric ester[3] used as a base material for plastics and other products. The primary danger in the manufacture of 9058 is that sodium chlorite, a chemical with explosive properties used as an industrial bleach, must be used to bleach the 9058 in order to yield the necessary product color.

On the morning of the explosion that killed plaintiff's husband, sodium chlorite had accumulated in a filter press. Following Emery's procedures, Mr. Pratt's coworker, Leroy Egan, began blowing air into the filter press to dry the insides of the press so that it could be opened up to scrape the chemicals and impurities that had collected from the filtering plates. Mr. Egan noticed that steam began blowing from the spigots at the bottom of the filter press. He called to Mr. Pratt for assistance in ascertaining the problem. Mr. Pratt and Mr. Egan stood directly in front of the filtering machine, observing the steam spew from the spigots for approximately two and one-half minutes. Suddenly, the steam turned to dark smoke and the filter press exploded into pieces. A flash fire enveloped the workers, severely injuring them both.

The parties agree that the sodium chlorite/ester combination was in the filter press due to the omissions of the operator responsible for treating the 9058. The op-

---

1. A mistrial was declared because the trial court had excluded certain of plaintiff's evidence relating to fumes which sometimes emanated from the defendant's filter presses. The trial judge found that the existence of fumes related to defendant's knowledge of an explosion hazard, and that the evidence was therefore admissible.

2. Ohio Rev.Code Ann. § 4121.80(D) (Page's 1986 Supp.).

3. An "ester" is a combination of alcohol and acid, which react together to form a viscous synthetic liquid. The ester 9058 is used in plastics as a "plasticizer," imparting flexibility and resiliency to plastics.

erator failed to add a sufficient amount of mono-sodium phosphate ("MSP") to break down the chlorite build-up and then failed to add a full 6,000–pound water wash to remove the unreacted sodium chlorite from the filter press.

Plaintiff introduced evidence to show that Emery's upper management knew of the explosion hazard of combining sodium chlorite with an ester in a filter press. For example, plaintiff's documents disclosed that several explosions and fires had occurred in the chemical plant when sodium chlorite and an ester combined in a filter press.[4] Reports of these explosions were circulated throughout Emery's upper management. Management investigators recommended that safety tests be developed to check for the presence of sodium chlorite before esters are allowed to enter filter presses. In mid–1980, Emery developed a chlorite safety test for all esters, stating that it was imperative to run the test on all chlorite-bleached esters because of the known explosion hazard. Several of the company's directors admitted to knowledge of prior explosions and hypothesized that operators would be injured if in the vicinity of such an explosion.

Mrs. Pratt also alleges that Emery's management never told the workers in the plant about the explosion and fire hazard. Emery did warn employees that sodium chlorite was a powerful "oxidizing agent" and should be kept away from combustible materials such as rags and paper. Two of Emery's officials admitted at trial that there is no reference to "explosion" in the manufacturing procedures given to the workers. Plaintiff introduced testimony that the workers did not understand that the caution referring to sodium chlorite as an "oxidizing agent" was in any way related to an explosion hazard and were not aware of the explosion problem. The only specific hazard Emery ever disclosed to the workers was that if sodium chlorite entered a filter press, the workers might be exposed to toxic fumes. The procedures did, however, contain inexplicit warnings such as, "residual chlorite can cause a hazardous situation while pressing."

Emery's area supervisor, Mr. Feinauer, admitted that nothing in Emery's procedures indicated to the workers that there was a potential for explosion with sodium chlorite. Mr. Feinauer stated that he believed that the "hazardous situation while pressing" caution referred only to toxic fumes emanating from the presses. In his accident report for Emery on the explosion in this case, Mr. Feinauer indicated that "lack of hazard awareness" was a cause of the explosion.

Mrs. Pratt also introduced evidence that Emery "intentionally concealed" the explosion hazard from the workers. Her evidence consisted of testimony and documents indicating that a new refining process was developed for 9058 which required a "drying procedure," instead of the usual water wash. While this drying process eliminated the product loss often accompanying a water wash, it produced toxic chlorine fumes and did not remove sodium chlorite from the 9058. Emery's technical manager, Mr. Price, explicitly assured the workers that the drying procedure and the resulting fumes were "safe," even though Mr. Price knew about the explosion problem. In late 1980, in response to operator complaints about breathing fumes, Emery reinstated the water wash procedure for all batches of 9058.

Plaintiff's evidence included memoranda which revealed that tests had been performed by Emery researchers and technicians on the properties of sodium chlorite, the dangers involved in the drying procedure, and the causes of past explosions. Certain of these memoranda were circulated through upper management at Emery, but no information concerning the hazards ever reached the workers; rather, the em-

---

**4.** Explosions occurred in 1973, 1974, 1978 and 1980, after an insufficient amount of MSP was added to break down the sodium chlorite when an ester was introduced into the filter press. In the 1973, 1974 and 1980 explosions, chlorite was combined with a "polymeric" ester, which can-

not sustain the water wash normally used on a "nonpolymeric" ester like 9058. Presumably, then, the dangers associated with explosions are greater with polymeric esters, where the safety water wash cannot be used to eliminate the sodium chlorite build-up.

ployees continued to labor under the illusion that the filter presses were safe.

Finally, plaintiff's evidence also suggested that Emery's procedures were not safe because employees were "guessing" at the amounts of MSP and water to add during the treatment process. Emery had provided no method for workers to measure the precise levels of MSP or water needed to remove sodium chlorite from the 9058. The potential for hazard was therefore great, especially because workers apparently had no knowledge of the dangers inherent in their measuring guesswork.

## III.

### DISCUSSION

Defendant Emery is appealing only the liability portion of the verdict and the punitive damages award and urges this court to consider the appeal in light of the new statute, Ohio Rev.Code Ann. § 4121.80. Emery asks that this court either reverse the liability judgment below or grant a new trial. On cross-appeal, Mrs. Pratt asks that we reverse the judgment *n.o.v.* granted by the district court and reinstate her damages award. She argues that application of the new statute to extinguish her judgment is a violation of Ohio's constitutional prohibition against retroactive legislation. In its order for a judgment *n.o.v.*, the court below did not address the constitutionality of the retroactive application of the statute to Mrs. Pratt's judgment.

Apart from the main issue of whether § 4121.80 can be applied retroactively to this action, both parties appeal a host of additional issues. Emery argues that Mrs. Pratt has not established a *prima facie* case of intentional tort against Emery; that Emery's liability cannot arise under a "failure to warn" theory; that a self-in-

sured employer such as Emery cannot be liable for items that the employer has already directly compensated the plaintiff for under workers' compensation; and that punitive damages were improperly awarded. Mrs. Pratt also raises several additional arguments on appeal;[5] however, since we decide here to reverse the district court's decision to refer Mrs. Pratt's damages award to the Ohio Industrial Commission, we need not reach her other issues.

### A. Retroactive Application of § 4121.80

The question of whether § 4121.80 applies retroactively to this action is the crux of both sides' appeals. The new statute dramatically alters Ohio common law with respect to intentional tort claims between employers and employees in several ways: it limits the amount of damages a plaintiff may recover; it takes the damage determination away from a jury and places it in the province of the Ohio Industrial Commission, a body that decides the amount of the award and pays the plaintiff from a common "intentional tort fund"; and it eliminates the right to recover punitive damages. In addition, the statute defines and codifies the meaning of "intentional tort":

> "Intentional tort" is an act committed with the intent to injure another or committed with the belief that the injury is substantially certain to occur.
>
> *       *       *       *       *       *
>
> "Substantially certain" means that an employer acts with deliberate intent to cause an employee to suffer injury, disease, condition, or death.

Ohio Rev.Code Ann. § 4121.80(G)(1).

As mentioned above, the statute was enacted after the entry of the jury award in this case, but while post trial motions were under consideration. Defendant argues

**5.** Plaintiff's additional arguments are: whether application of the new statute to her judgment is a violation of the due process clause of the United States Constitution; whether it was prejudicial error for the court to refuse to instruct the jury on safety requirements imposed on the employer by law; whether it was prejudicial error for the court to exclude plaintiff's evidence of defendant's refusal to provide available safety devices; whether it was prejudicial error for the court to limit the number of plaintiff's expert witnesses at trial to three; whether it was prejudicial for the court to instruct the jury that it could consider punitive damages only in regard to plaintiff's personal injury claim, and not in regard to the wrongful death claim; and whether it was prejudicial error for the court to comment to the jury on the instructions in a manner that supported defendant's closing arguments.

that this court must apply current Ohio law (the new statute) while the case is on appeal, especially given the Ohio legislature's clear intent when enacting the statute:

> This section applies to and governs any action based upon a claim that an employer committed an intentional tort against an employee *pending in any court* on the effective date of this section and all claims or actions filed on or after the effective date, notwithstanding any provisions of any prior statute or rule of law of this state.

Section 4121.80(H) (emphasis supplied). Since this case was "pending" both now and on the effective date of the statute, defendant argues, this court must review the appeal in light of the new law. Indeed, this circuit has held that a court of appeals sitting in diversity must apply the law of the state as existing at the time of its decision rather than as it stood at the time the case was decided in district court. *Awrey v. Progressive Casualty Insurance Co.*, 728 F.2d 352, 354 (6th Cir.1984), *cert. denied*, 474 U.S. 920, 106 S.Ct. 250, 88 L.Ed.2d 258 (1985).

■ We disagree with Emery's claim. We believe that when applied to this case, the new Ohio statute violates § 28, Article II of the Ohio Constitution.[6] The new statute, which applies to all cases "pending" on its effective date (August 22, 1986), is in conflict with Article II, § 28 of Ohio's Constitution, which provides that "[t]he General Assembly shall have no power to pass retroactive laws...." *See United States v. McGee*, 714 F.2d 607, 611 (6th Cir.1983); *Perk v. City of Euclid*, 17 Ohio St.2d 4, 244 N.E.2d 475 (1969).

In *Gregory v. Flowers*, 32 Ohio St.2d 48, 53, 290 N.E.2d 181, 184 (1972), the Ohio Supreme Court stated that the state's constitutional ban against retroactive legislation is applicable solely to laws which are substantive—not procedural-remedial—in nature. *See also Wilfong v. Batdorf*, 6 Ohio St.3d 100, 103–104, 451 N.E.2d 1185,

1188–89 (1983). Procedural or remedial laws are those "providing rules of practice, courses of procedure or methods of review," or those "prescrib[ing] methods of enforcement of rights or obtaining redress." *French v. Dwiggins*, 9 Ohio St.3d 32, 33, 458 N.E.2d 827, 829 (1984). *See also Kiser v. Coleman*, 28 Ohio St.3d 259, 242 N.E.2d 658 (1986); *Kilbreath v. Rudy*, 16 Ohio St.2d 70, 242 N.E.2d 658 (1968). Laws affecting substantive rights are those which create duties, rights and obligations. *State ex. rel. Holdrige v. Industrial Comm'n.*, 11 Ohio St.2d 175, 178, 228 N.E.2d 621, 623 (1967). Thus, if the new law is found to be remedial or procedural in nature, the court should apply it to this action. If, on the other hand, § 4121.80 has a *substantive* impact—which we believe it has—then the court should not apply it retroactively to this case.

A federal court of appeals in diversity must apply the law of the forum state. *Erie Railroad Co. v. Tompkins*, 304 U.S. 64, 58 S.Ct. 817, 82 L.Ed. 1188 (1938). While this case was on appeal in this court, the Ohio Supreme Court decided four cases which conclusively resolved the retrospectivity question as applied to § 4121.80. In *Kunkler v. Goodyear Tire & Rubber Co.*, 36 Ohio St.3d 135, 522 N.E.2d 477 (1988), *Van Fossen v. Babcock & Wilcox Co.*, 36 Ohio St.3d 100, 522 N.E.2d 489 (1988), and *Pariseau v. Wedge Products, Inc.*, 36 Ohio St.3d 124, 522 N.E.2d 511 (1988), that court held that the application of § 4121.80 to pending claims disturbs a substantive right, and therefore is violative of § 28, Article II of the Ohio Constitution.

In *Van Fossen*, the Ohio Supreme Court held that, if applied to actions accruing prior to the new statute's effective date, § 4121.80 would disturb a plaintiff's right to rely upon the common law definition of "intentional tort" as established in Ohio under *Jones v. VIP Development Co.*, 15 Ohio St.3d 90, 472 N.E.2d 1046 (1984). Pri-

---

**6.** Our analysis does not abolish this circuit's existing rule under *Awrey* that a court must apply the law of the state as it now stands, rather than as it stood at the time the case was decided in the district court. *Awrey's* reach extends only as far as the Ohio Constitution permits. As a result, it can only apply to legislation that is not substantive in nature and therefore not in violation of Ohio's prohibition against retroactive legislation.

or to the enactment of § 4121.80, Ohio's definition of "intentional tort" was set out in *Jones* as "an act committed with the intent to injure another, or committed with the belief that such injury is substantially certain to occur." *Id.* at 95, 472 N.E.2d at 1051. Section 4121.80 adopts that definition, but adds that " 'substantially certain' means that an employer acts with deliberate intent to cause an employee to suffer injury, disease, condition or death." § 4121.80(G)(1). According to *Jones*, the employer must have known or believed that his actions were substantially certain to result in the harm to an employee before the intent to injure would have been inferred. The employer's intent, wrote the *Jones* court, "may be inferred from his conduct and surrounding circumstances." *Id.* at 95, 472 N.E.2d at 1051. Thus, specific intent to injure was not required under *Jones* for a finding of intentional misconduct.

Under § 4121.80(G)(1), however, only the employer who acts with "deliberate intent" to cause the act which results in injury, knowing that his intentional conduct will be substantially certain to cause injury, commits an "intentional tort." The statute therefore requires direct proof of substantially certain conduct, removing the inference permitted under *Jones*. This change in the common law definition places a more onerous burden on plaintiffs to demonstrate a deliberate intent to cause injury. As the Ohio Supreme Court held in *Van Fossen*, 36 Ohio St.3d at 109, 522 N.E.2d at 498:

> R.C. 4121.80(G)(1) would remove appellees' potentially viable, court-enunciated cause of action by imposing a new, more difficult statutory restriction upon appellees' ability to bring the instant action. We therefore hold that this result constitutes a limitation, or denial of, a substantive right, and consequently causes the statute to fall within the ban against retroactive laws established by Section 28, Article II of the Ohio Constitution.

*See also Kunkler v. Goodyear Tire & Rubber Co.*, 36 Ohio St.3d 135, 138, 522 N.E.2d 477, 480 (1988). Thus, since this is a diversity case and we must defer to Ohio law,

we conclude that § 4121.80 was impermissibly applied to Mrs. Pratt's action.

Even though the *Van Fossen, Pariseau* and *Kunkler* cases make it abudantly clear that § 4121.80 may not be applied retroactively to cases pending on the statute's effective date, one might argue that those cases dealt only with the change in the definition of an intentional tort. In this case, the district court affirmed the liability verdict. An argument could be made, therefore, that if the provisions of the new statute were separately parsed out, the portion of the statute assigning damages to the Ohio Industrial Commission would be considered remedial in nature, even though the change in definition of intentional tort was held to be substantive. This distinction is relevant to this case, where the damages verdict is under challenge.

We are fully cognizant of the definitional mire associated with labeling rights as "procedural" or "substantive." These two categories are not rigid boxes, but are subtle and fluid, and depend upon the circumstances of individual cases. Although we acknowledge this definitional awkwardness, Ohio law makes it clear that the damages provision of the new statute affects a second substantive right relevant to this appeal—Mrs. Pratt's right to a trial by jury.

Section 4121.80 affects the right to a jury trial by assigning the damages determination to the Ohio Industrial Commission, snatching the decision from the province of the jury. The right to a jury trial under Ohio law has been held to be a fundamental, substantial right and not merely a question of procedure. *Cleveland Ry. Co. v. Halliday*, 127 Ohio St. 278, 283–84, 188 N.E. 1, 3 (1933):

> [T]he right to a jury trial does not involve merely a question of procedure. The right to jury trial derives from Magna Carta. It is reasserted both in the Constitution of the United States and in the State of Ohio. For centuries it has been held that the right of trial by jury is a fundamental constitutional right, a substantial right, and not a procedural privilege. (citations omitted).

*See also Freels v. Dayton Electroplate, Inc.,* No. 85–2031, slip op. at 8 (Ohio Com. Pl.Ct. Jan. 1, 1987) (right to jury trial substantive right under Ohio law; § 4121.80 therefore unconstitutional as applied); *Quick v. Sun Refining & Marketing Co.,* No. 820292, slip op. at 3 (Ohio Com.Pl.Ct. Dec. 3, 1986) (same); *Meadors v. Zaring Co.,* No. A–8503907, slip op. at 10 (Ohio Com.Pl.Ct. Oct. 6, 1986), *aff'd,* 38 Ohio App.3d 97, 526 N.E.2d 107 (1987) (same).

At the time the filter press exploded, at the time Mrs. Pratt filed her complaint, and at the time the jury rendered its verdict, there was a common law right in Ohio for an employee to obtain money damages for an intentional tort occurring in the workplace and to have a jury determine the amount of damages. Under Ohio law, a statute which eradicates a vested right "acquired under existing laws, or creates a new obligation, imposes a new duty, or attaches a new disability, in respect to transactions already passed *must be deemed retrospective.*" *Perk v. City of Euclid,* 17 Ohio St.2d 4, 8, 244 N.E.2d 475, 477 (1969). *See also Weil v. Taxicabs of Cincinnati,* 139 Ohio St. 198, 39 N.E.2d 148 (1942).

In *Weil,* the Ohio Supreme Court held that a statutory amendment which impairs a common law right of action—even though the statute substitutes a new right to compensation—deals with a vested substantive right, not a remedial right. Such a statute is therefore within the purview of Ohio's constitutional prohibition against the legislative enactment of retroactive laws. In this case, as in *Weil,* the Ohio General Assembly transformed plaintiff's common law right of a trial to a court and jury into a limited determination of part of the claim before a court, followed by an administrative determination of damages. As noted in *Kneisley v. Lattimer–Stevens Co.,* No. 86AP–1046 (Ohio Ct. of Appeals Aug. 4, 1987) slip op. at 3 [available on WESTLAW, 1987 WL 15312], "[t]hat type of change is substantive, and cannot be accomplished retroactively."

Thus, § 4121.80 affects two substantive rights: the right to the common law definition of an intentional tort and the right to a jury trial. We therefore reverse the district court's judgment notwithstanding the verdict on this issue and reinstate Mrs. Pratt's damages award.

**B.  Sufficiency of Proof of Hazard**

Defendant Emery next argues that plaintiff cannot establish a *prima facie* case of intentional tort without presenting evidence of a hazard in the procedure involved in the accident. Even though we hold that the new statute is not applicable to this action, Emery urges that under Ohio's previous common law (articulated in *Jones v. VIP Development Co.,* 15 Ohio St.3d 90, 472 N.E.2d 1046 (1984) and clarified in *Van Fossen,* 36 Ohio St.3d at 116, 522 N.E.2d at 498), Mrs. Pratt failed to present sufficient evidence to prove an intentional tort. As stated above, *Jones* required proof that an injury was substantially certain to occur and that the employer believed that its act was substantially certain to cause injury. *Jones,* 15 Ohio St.3d at 95, 472 N.E.2d at 1051. *Van Fossen* further clarified this standard, holding that:

> [T]he following must be demonstrated: (1) knowledge by the employer of the existence of a dangerous process, procedure, instrumentality or condition within his business operation; (2) knowledge by the employer that if employees are required by virtue of their employment to be subjected to such dangerous process, procedure, instrumentality or condition, then harm to them would be a substantial certainty, and not just a high risk; (3) that the employer, under such circumstances, and with such knowledge, did act to so require the employee to continue performing his employment tasks.

36 Ohio St.3d at 116, 522 N.E.2d at 504.

We believe that Mrs. Pratt presented sufficient proof from which a jury might infer that Emery's procedures were hazardous and that defendant committed an intentional tort.

The jury was asked whether Emery knew an explosion was substantially certain to occur in view of evidence of past explosions, and in view of evidence that

Emery was aware that the workers were kept ignorant of any explosion hazard. Plaintiff also introduced testimony that Emery knew that the workers were guessing at the amounts of water and chemicals they added during the treatment procedures. Mrs. Pratt contends, and the jury apparently believed, that no procedure is safe if the persons using the procedure are kept ignorant of the explosive properties of a component chemical. The hazard was in the ignorance of the employees, and in the inability of the employees to follow procedures precisely. Evidence suggested that defendant knew about the problem of imprecision and guessing. Thus, the jury could have found that employee ignorance combined with imprecise methods and hazardous chemicals presented sufficient evidence of a hazard in the procedure involved in the accident. There was evidence to show that the employer knew of the hazard, knew that the employees were exposed to risk, and acted to require the employees to continue performing their tasks. Thus, under the *Jones* "substantial certainty" test, or under the more precise *Van Fossen* "knowledge" test, the reasonable juror could have found the requisite intent.

■ As the Ohio Supreme Court held in one of the consolidated cases comprising the *Jones* decision, *Gains v. City of Painesville*, a reviewing court should not lightly overturn a jury verdict: "A reviewing court should be particularly loathe to disturb a jury's findings on an issue, such as intent, which is so intimately bound to the interpretation of facts and the demeanor of witnesses." *Id.* at 96–97, 472 N.E.2d at 1052. This court has expressed the same hesitation toward tampering with jury findings. *Gillham v. Admiral Corp.*, 523 F.2d 102, 109 (6th Cir.1975), *cert. denied*, 424 U.S. 913, 96 S.Ct. 1113, 47 L.Ed.2d 318 (1976) (to overturn a jury verdict, evidence must be such that "reasonable minds could not differ as to the conclusions to be drawn from the evidence"). We are not to reweigh evidence to reach our own conclusions about the correctness of a jury's decision; our task is simply to determine whether reasonable jurors could, under any theory submitted to them, have

resolved the dispute as they did. *Thompson v. Bass*, 616 F.2d 1259, 1267 (5th Cir.), *cert. denied*, 449 U.S. 983, 101 S.Ct. 399, 66 L.Ed.2d 245 (1980).

Thus, after reviewing the evidence and in deference to these admonitions, we affirm the jury verdict on this issue.

## C. *Failure to Warn Instruction*

■ Defendant's next argument is primarily an objection to a sentence in the jury instructions, drawn from the *Jones* case, which stated: "A defendant who fails to warn of a known defect or hazard which poses a grave threat of injury may reasonably be considered to have acted despite a belief that harm is substantially certain to occur." Emery argues that a failure to warn cannot give rise to the knowledge requirement in an intentional tort under *Van Fossen.*

The Ohio Supreme Court in *Jones* had held that "[t]he existence of this knowledge or intent on the part of the actor may be inferred from his conduct and surrounding circumstances." 15 Ohio St.3d at 95, 472 N.E.2d at 1051. In *Van Fossen*, that court sought significantly to "limit the areas within which 'intent' on the part of the actor may be circumstantially *inferred.*" *Van Fossen*, 36 Ohio St.3d at 117, 522 N.E.2d at 504 (emphasis in original). Indeed, the *Van Fossen* court went on to explain that a "failure to warn," in and of itself, was not sufficient to prove intent:

There are many acts within the business or manufacturing process which involve the existence of dangers, where management fails to take corrective action, institute safety measures, or properly warn the employees of the risks involved. Such conduct may be characterized as gross negligence or wantoness on the part of the employer. However, in view of the overall purposes of our Workers' Compensation Act, such conduct should not be classified as "intentional tort" and therefore an exception, under *Blankenship* [*v. Cincinnati Milacron Chemicals, Inc.*, 69 Ohio St.2d 608, 433 N.E.2d

572 (1982)] or *Jones*, to the exclusivity of the Act.

*Id.* There is little question then, given the *Van Fossen* admonition, that a case predicated solely upon an employer's failure to warn employees of a danger would not demonstrate the requisite intent. The jury instruction given in this case, if it was undergirded only by a failure to warn theory, would contravene the *Van Fossen* rule. "Failure to warn," however, was not the sole theory in plaintiff's case. The crux of plaintiff's argument was not simply that the employer did not tell the employees about the dangers, but that the employer *knew* that an accident was substantially certain to occur, *knew* that employees were improperly combining explosive chemicals, and in spite of this knowledge, sanctioned the activity by allowing it to continue. The sentence regarding a failure to warn could have been viewed by the jurors as but one brick in the house of evidence presented against the defendants, as but one of the surrounding circumstances from which intent might reasonably have been inferred.

Moreover, the jury instruction, taken in context, clearly announced the requirement that the actor *know* that his or her actions were substantially certain to cause injury and that "negligence" or "recklessness" did not amount to an "intentional wrong."

The jury instructions, as a whole, were firmly consistent with the *Van Fossen* rule. We quote at length to provide the context:

> The concept that permeates this case upon which this case is based is the phrase "intentional tort." A tort, by the way, is a civil wrong. An intentional tort is an act committed with the intent to injure another, or committed with the belief that such injury is substantially certain to occur, not merely likely. An intent to injure a specific person is not required.
>
> A defendant who fails to warn of a known defect or hazard which poses a grave threat of injury may reasonably be considered to have acted, despite a belief that harm is substantially certain to occur.

> You will note that the intentional tort concept has two different avenues. But in this case, there is only one. I do instruct you that there has been no evidence presented of an intent to injure. That leaves us with the phrase, "substantially certain." That phrase is to be given its ordinary and usual meaning. It is more than likelihood. Substantial means about, or practically, or nearly, almost, essentially or virtually, and certain. Included among the definitions of certain are "sure" and "inevitable." The term "substantially certain" may be restated as "virtually sure" or "nearly inevitable."
>
> *Observe, ladies and gentlemen, it is not enough for the plaintiff to prove that Emery Industries was negligent. We do not deal in this case with negligence. Negligence is a failure to use ordinary care. Ordinary care is the care that a reasonably prudent person would use under the same or similar circumstances. But it's the element of substantial certainty which distinguishes a negligent act from intentionally tortious conduct.*
>
> *Where a defendant acts despite his knowledge that risk is appreciable, his conduct is negligent. Where the risk is great, his actions may be characterized as reckless or wanton, but that is not an intentional wrong. The actor must know or believe that harm is a substantially certain consequences [sic] of his act before an intent to injure will be inferred.*
>
> The existence of this knowledge or intent on the part of the actor may be inferred from his conduct and surrounding circumstances.
>
> Ladies and gentlemen, the mere knowledge and appreciation of a risk, something short of substantial certainty, is not intent.
>
> The plaintiff must establish by a preponderance of the evidence that the death of Paul W. Pratt was caused by an intentional tort.

Joint Appendix 1244–45 (emphasis supplied).

A jury could have inferred from the evidence of Emery's knowledge of the danger, its failure to specifically warn its employees about the explosion hazard, and its knowledge about employees using imprecise procedures in combining chemicals, that Emery was acting with substantial certainty that harm would occur. *Van Fossen* did not completely prohibit the drawing of inferences from circumstantial evidence; it merely restricted the areas within which intent may be inferred. We do not believe that the facts of this case paint the same negligence scenario forbidden by the *Van Fossen* court.

We therefore believe that plaintiff has presented sufficient evidence that a reasonable jury could find that defendant's acts, including but not limited to its failure to warn, constituted an intentional tort.

## D. *Set–Off for Workers' Compensation*

■ Defendant argues that it should be allowed to set off against the jury verdict the items it already paid to plaintiff through workers' compensation. Emery is self-insured. Emery contends that self-insured employers should be able to subtract workers' compensation payments from any jury verdict to avoid having to pay twice for the harm done. While defendant's argument appears equitable, the Ohio Supreme Court has not accommodated that viewpoint.

The trial judge in this case, relying on *Jones*, held that the employer was not entitled to a set-off for workers' compensation payments. In *Jones*, the Ohio Supreme Court specifically held: "An employer who has been held liable for an intentional tort is not entitled to a setoff of the award in the amount of workers' compensation benefits received by the employee or his representative." 15 Ohio St.3d at 100, 472 N.E. 2d at 1055. The court explained that the compensation provided by the workers' compensation law " 'is in the nature of an occupational insurance, and, like general insurance, cannot be deducted and treated as an offset for claims for damages for wrongful death or injury.' " *Id.* at 100, 472 N.E.2d at 1055 (quoting *Trumbull Cliffs*

*Furnace Co. v. Shachovsky*, 111 Ohio St. 791, 146 N.E. 306 (1924)).

This rule has been held applicable to self-insured employers as well. *Balyint v. Arkansas Best Freight System*, 18 Ohio St.3d 126, 480 N.E.2d 417 (1985); *Formoso v. Plain Dealer Publishing Co.*, 18 Ohio St.3d 138, 480 N.E.2d 426 (1985). Accordingly, we hold that defendant's argument is unsupported by case law and therefore lacks merit.

## E. *Punitive Damages*

Finally, defendant argues that punitive damages cannot be awarded in an intentional tort action where plaintiff has not proven any intent to injure. Again, this question falls within the province of the jury.

■ Under Ohio law, Mrs. Pratt must prove that Emery acted with "actual malice" before the question of punitive damages may be submitted to the jury. Thus, Emery argues that only a showing of deliberate intent to injure will support an award of punitive damages. This position is directly contrary to Ohio law, as recognized by this court in *Gillham v. Admiral Corp.*, 523 F.2d 102, 109 (6th Cir.1975), *cert. denied*, 424 U.S. 913, 96 S.Ct. 1113, 47 L.Ed.2d 318 (1976), and by the Ohio Supreme Court in *Leichtamer v. American Motors Corp.*, 67 Ohio St.2d 456, 424 N.E.2d 568 (1981). In *Leichtamer*, the court held:

Actual malice may be inferred from conduct and surrounding circumstances. *Davis v. Tunison*, 168 Ohio St. 471 [, 155 N.E.2d 904 (1959)]. Moreover, intentional, reckless, wanton, willful and gross acts which cause injury to person or property may be insufficient to evidence that degree of malice required to support an award of punitive damages in tort actions.

The trial court in this case gave a clear instruction on the requirement of finding actual malice for punitive damages, stating that "[a]ctual malice means anger, hatred, ill will, a spirit of revenge or a reckless disregard of the consequences." Joint Appendix at 1273. We find that the trial

court's instruction was a fair statement of the law and that the evidence as outlined above was sufficient to permit reasonable jurors to conclude that Emery knew that its operations posed a grave danger to the lives of its employees, and therefore that its failure adequately to warn employees and to modify its procedures was conduct sufficiently evidencing at least ill will or reckless disregard of the consequences. We conclude that the district court erred in granting the judgment *n.o.v.* on the issue of damages, both compensatory and punitive.

## IV.

### CONCLUSION

For the reasons stated above, we reverse the district court's grant of a judgment notwithstanding the verdict and reinstate plaintiff's compensatory and punitive damages awards, with costs and interest to be paid by defendant. We affirm the district court on all other issues.