**BITZER, Appellee and Cross–Appellant,**

**v.**

**LINCOLN ELECTRIC COMPANY, Appellant and Cross–Appellee.**

[Cite as *Bitzer v. Lincoln Elec. Co.* (1990), 67 Ohio App.3d 53.]

Court of Appeals of Ohio,
Cuyahoga County.

Nos. 56653, 56690.

Decided March 26, 1990.

*Perchick, Lallo & Feldman* and *Nancy L. Gervinski,* for appellee and cross-appellant.

*Kitchen, Messer & Deery, Steven W. Albert* and *John D. Rodman,* for appellant and cross-appellee.

ANN MCMANAMON, Judge.

The appellant, John Bitzer, Jr., was a pieceworker at Lincoln Electric Company ("the company") who packaged and sealed electrodes for shipment. On September 13, 1983, he was assigned to the P-line to operate a machine which cans and seals containers of electrodes. Because he had no work on his line he sought extra work and began to inspect defective wire on the L-line. While so engaged, Bitzer noticed the L-line operator was having difficulty with the operation of his carton sealer. Bitzer and his co-worker determined that loose bolts on the shaker plate of the carton sealer were the source of the malfunction. While holding a flashlight to illuminate the area, Bitzer reached through an unguarded opening in the machine to adjust the bolts with an Allen wrench. Before he finished, the push bar cycled, caught his hand and nearly amputated it at the wrist.

Bitzer was unaware that a yellow guard had once been put over the same opening where he was injured after a similar accident in 1972. Bitzer swore that he never saw a guard over that space during his three-year tenure as an electrode boxer and that he would not have removed the guard to make an adjustment. It was undisputed that at the time of the incident no guard was in place.

Bitzer successfully prosecuted a suit against the company claiming intentional tort which resulted in a jury verdict in the sum of $287,500.

In a timely appeal, the company raises three assignments of error.[1]  Two challenge the denial of its motions for a directed verdict and one alleges the court erred by failing to allow Bitzer's workers' compensation benefits to be applied as a setoff against the jury award.  Bitzer filed a timely cross-appeal[2] challenging both the court's refusal to instruct the jury on punitive damages and its denial of his motion for prejudgment interest without a hearing.  At the appellate argument, counsel orally withdrew Bitzer's claim on the punitive damages issue.  Upon review, we find that the company's assignments of error are not well taken nor is Bitzer's prejudgment interest argument.  We therefore affirm the judgment of the trial court.

At trial Bitzer explained that electrode boxers are permitted to make adjustments on machines in their area, that the company sells them tools and that those tools are kept at their work stations for that purpose.  He told the court that, though the maintenance department could have made the adjustment, maintenance is not usually called to tighten bolts.

Larry Brewster, a former electrode boxer, told the court that he similarly injured his hand in 1972.  He explained that he reached into the same opening without turning off the power to retrieve a part.  Brewster stated that, before he could pull back his hand, the push bar cycled and yanked his hand off his wrist.  Subsequently, the company installed a guard over the opening on the carton/can sealers.  Brewster also explained that the guards posed a problem during the frequent changeovers from the carton sealing operation to the can sealing operation.  Eventually the guards were removed and were not replaced before Bitzer's injury.

In defense, the company called shift foreman James Kline who swore that, though employees are not required to perform adjustments to machines, electrode boxers did so to keep their lines in production.

The defense also theorized that the injury was caused by Bitzer's failure to turn the machine off before adjusting the shaker plate.

In the first and second assignments of error, the company challenges the denial of its motions for directed verdict at the close of both the plaintiff's case and at the close of all the evidence.  It posits that Bitzer failed to establish the necessary elements of intent.

---

1.  See Appendix.

2.  See Appendix.

■ To establish the elements of intent in an intentional work place tort the employee must demonstrate:

"(1) knowledge by the employer of the existence of a dangerous process, procedure, instrumentality or condition within its business operation; (2) knowledge by the employer that if the employee is subjected by his employment to such dangerous process, procedure, instrumentality or condition, then harm to the employee will be a substantial certainty and not just a high risk; and (3) that the employer, under such circumstances, and with such knowledge, did act to require the employee to continue to perform the dangerous task." *Van Fossen v. Babcock & Wilcox* (1988), 36 Ohio St.3d 100, 522 N.E.2d 489, paragraph five of the syllabus.

The standard for granting a directed verdict is whether the movant is entitled to judgment as a matter of law when the evidence is construed in the light most favorable to the nonmovant. *Sanek v. Duracote Corp.* (1989), 43 Ohio St.3d 169, 172, 539 N.E.2d 1114, 1116. See *Pariseau v. Wedge Products, Inc.* (1988), 36 Ohio St.3d 124, 522 N.E.2d 511. The intentional tort issue is to be determined by a jury only where there is probative evidence which, if believed, allows reasonable minds to come to different conclusions. *Sanek, supra.* Cf. *Pratt v. Natl. Distillers & Chemical Corp.* (C.A.6, 1988), 853 F.2d 1329, certiorari denied (1989), 489 U.S. 1012, 109 S.Ct. 1121, 103 L.Ed.2d 184 (court reversed a trial court's grant of a judgment n.o.v. because sufficient facts existed to allow a jury to determine the intentional tort issue). The court may not weigh evidence or test witness credibility when ruling on a directed verdict motion. *Sanek, supra.*

Evidence adduced at trial revealed that the company knew, as early as 1972, that the exposed push bar and roller chain mechanism in the carton sealer was a hazard. Brewster's 1972 injury caused the company to order guards installed over the exposed area to prevent further injuries. Thus, the company was aware that the exposed push bar and roller chain created a hazard. Cf. *Romes v. Ford Motor Co.* (Nov. 8, 1989), Lorain App. No. 89CA004518, unreported, 1989 WL 135830.

Company safety superintendent Donald Elfvin told the court that the purpose of a guard is to cover a pinch point on a machine. He averred that the area of the carton sealer where Brewster and Bitzer were injured was a pinch point. Elfvin testified that the company had a longstanding, well-enforced and posted "no guard, no run" policy. He explained that the company required supervisors to check guards monthly and that it was safe to assume that no inspections were done if a guard was missing for three years. Elfvin also told the court that it was a regular practice for employees to make adjustments on the machines they worked on or around. Despite this practice

and with the knowledge that the subject area was a pinch point, the maintenance department neither issued a warning to employees not to tighten bolts inside the carton sealers, nor advised them to do so only with the power off.

The company stipulated that there was a one hundred percent chance that the carton sealer could cause injury.

We find that there was sufficient evidence presented upon which reasonable minds could differ that the company permitted electrode boxers to adjust the carton/can sealers when it knew, with substantial certainty, it would result in injury to the employee. See *Kunkler v. Goodyear Tire & Rubber Co.* (1988), 36 Ohio St.3d 135, 522 N.E.2d 477. Cf. *Sanek, supra* (no evidence of previous accidents and no guard required at the time of the accident).

The company also alleges that there was no evidence that it required Bitzer to perform adjustments to machinery in the work area.

Bitzer was a merit-rated employee. The company evaluates such employees using as factors dependability, output, ideas and cooperation. The cooperation element of the rating includes cooperation with co-workers. Thus, by virtue of the merit pay rating system, the company encouraged its employees to assist other workers.

Furthermore, the evaluation system encourages employees to maintain high levels of output. Shift foreman James Kline told the court that when an employee's line stays in production both the employee and the company benefit. Bitzer explained that employees routinely made adjustments to equipment and that the maintenance department would "laugh" if called to tighten bolts. Thus, because the employees were evaluated on output and cooperation, the company's merit pay system could be construed to require employees to adjust the machinery they used in order to keep the production lines in operation. Reasonable minds could infer that the company required its employees to perform the adjustments that led to Bitzer's injury.

The company next argues that the missing guard created no hazard, but posits it was the employee's failure to turn off the power to the carton sealer that caused the injury.

Bitzer swore that he would not have reached into the machine had a guard been in place. He explained that the push bar did not cycle regularly and that the machine "looked dead." The company was aware that a similar injury occurred when an employee reached through the same opening with the power on. Despite this knowledge, the maintenance department never advised employees to make adjustments to the shaker plates only if the power was off. This evidence was sufficient to create a jury issue. Cf. *Pariseau v.*

*Wedge Products, Inc., supra* (no evidence the employee's injury was caused by a repeating punch press as the employee alleged).

The trial court properly denied both motions for a directed verdict. Accordingly, the first and second assignments of error fail.

█ In its third assignment, the company argues that it should be allowed to set off the benefits Bitzer received as workers' compensation against the jury award. The company maintains that it is unfair and unreasonable not to allow setoff.

The Supreme Court does not appear to have accommodated the company's viewpoint as it is unsupported by case law. The court held in *Jones v. VIP Development Co.* (1984), 15 Ohio St.3d 90, 15 OBR 246, 472 N.E.2d 1046, that an employer held liable for an intentional tort is not entitled to a setoff against the jury award in the amount of workers' compensation benefits received by the employee. *Id.* at paragraph three of the syllabus. See, also, *Trumbull Cliffs Furnace Co. v. Shachovsky* (1924), 111 Ohio St. 791, 146 N.E. 306; *Pratt v. Natl. Distillers & Chemical Corp., supra.* The *Jones* court explained that workers' compensation is akin to occupational insurance, and like general insurance, it cannot be deducted and treated as a setoff for claims for injury. *Jones v. VIP Development Co., supra,* 15 Ohio St.3d at 100, 15 OBR at 254, 472 N.E.2d at 1055.

Accordingly, the third assignment of error fails.

█ In his sole remaining cross-assignment, Bitzer challenges the denial of his motion for prejudgment interest without a hearing.

Prejudgment interest may be awarded where a party has failed to make a good faith effort to settle. R.C. 1343.03(C).

The Supreme Court held, construing the language "good faith effort to settle," that:

"A party has not 'failed to make a good faith effort to settle' under R.C. 1343.03(C) if he has (1) fully cooperated in discovery proceedings, (2) rationally evaluated his risks and potential liability, (3) not attempted to unnecessarily delay any of the proceedings, and (4) made a good faith monetary settlement offer or responded in good faith to an offer from the other party. If a party has a good faith, objectively reasonable belief that he has no liability, he need not make a monetary settlement offer." *Kalain v. Smith* (1986), 25 Ohio St.3d 157, 25 OBR 201, 495 N.E.2d 572, syllabus.

The decision as to whether a party's settlement efforts comport with the good faith requirement is left to the sound discretion of the trial court. *Id.* at 159, 25 OBR at 202, 495 N.E.2d at 573. See, also, *Worrell v. Multipress, Inc.*

(1989), 45 Ohio St.3d 241, 543 N.E.2d 1277; *Cox v. Fisher Fazio Foods* (1984), 13 Ohio App.3d 336, 13 OBR 414, 469 N.E.2d 1055.

Bitzer's motion alleged that because the company made no settlement offer, it failed to make a good faith effort to settle. It was the company's position throughout the proceedings that it was not liable. The fact that a jury returned a plaintiff's verdict does not lead to the conclusion that the defendant acted without good faith. See *Kalain v. Smith, supra; Duren v. Suburban Community Hosp.* (1985), 24 Ohio Misc.2d 25, 24 OBR 450, 495 N.E.2d 51.

Bitzer also argues the trial court erred by failing to hold a hearing on his motion. Though the statute requires a hearing, we agree with the Summit County Court of Appeals that the statute does not mandate that the hearing be conducted in a particular manner. *Laverick v. Children's Hosp. Medical Ctr. of Akron* (1988), 43 Ohio App.3d 201, 540 N.E.2d 305. The trial court may exercise its discretion to determine whether an oral or a non-oral hearing is necessary. *Id.* We, therefore, find that the court committed no error by failing to conduct an oral hearing on Bitzer's motion. A non-oral hearing on the motion papers is sufficient to meet with the hearing requirement of the statute. *Id.*

The second cross-assignment of error fails.

The judgment is affirmed.

*Judgment affirmed.*

JOHN V. CORRIGAN, P.J., and PRYATEL, J., concur.

AUGUST PRYATEL, J., retired, of the Eighth Appellate District, sitting by assignment.

### APPENDIX

Appellant's assignments of error are:

#### I

"Whether the trial court erred in overruling defendant's motion for directed verdict when the plaintiff failed to produce any evidence that he was required by virtue of his employment to be subjected to a dangerous condition or that he was required to perform the tasks which he was performing at the time of his injury."

#### II

"Whether the trial court erred in overruling defendant's motion for directed verdict when the plaintiff failed to produce any evidence that Lincoln Electric

Company had knowledge of a dangerous condition within its business operation."

## III

"Whether the trial court erred in failing to apply the plaintiff's worker's [*sic*] compensation benefits as a setoff against the jury verdict."

The appellee's cross-assignments of error are:

## I

"The trial court erred in failing to charge the jury on the issue of punitive damages."

## II

"The trial court erred when it denied plaintiff/appellee's motion for prejudgment interest."