DECISION.
{¶ 1} Defendants-appellants Dale Carroll, Carroll, Inc. ("CI"), and D.D. G. Mining Service ("DDG") appeal the trial court's entry of summary judgment in favor of plaintiff-appellee Arkwright Mutual Insurance Company ("Arkwright"). For the following reasons, we affirm the trial court's judgment.
{¶ 2} The following facts, taken from the record, are mainly undisputed. Beginning in the mid-1980s, Bethel Toler, a storeroom clerk for Conesville Coal Preparation Company ("Conesville"), and others, including Carroll and the two entities he owned and operated, CI and DDG, initiated a scheme to defraud Toler's employer, Conesville, by submitting to the payables department of its parent company, American Electric Power Service Corporation ("AEP"), false invoices purportedly for supplies and materials needed at the Conesville plant. After discovering this conspiracy, AEP submitted a claim to Arkwright, its insurer, for its losses totaling over $545,000. In exchange for its payment of the claim, Arkwright received the rights to assert claims against those involved in the conspiracy.
{¶ 3} In May 1997, Arkwright filed a complaint against twelve defendants, including Carroll and his two companies, alleging fraud and conversion. Carroll, appearing pro se, filed answers to the complaint on his behalf and on behalf of CI and DDG, but they were captioned as "motions to dismiss." The action was stayed when two of the original defendants filed for bankruptcy. Five years later, the case was reactivated, at which time Arkwright moved for summary judgment or, in the alternative, for judgment on the pleadings against the remaining defendants with which it had not reached a settlement agreement, including Carroll and his companies. Arkwright supported its summary-judgment motion with the affidavits of Lee Brewer, Esq., an investigator for Arkwright, Bethel Toler, one of the original defendants Arkwright had settled with, and Mark Klusmeier, Esq., Arkwright's counsel.
{¶ 4} In his affidavit, Brewer stated that his firm's investigation had revealed that Carroll had pleaded guilty to mail fraud in connection with the conspiracy. Brewer stated that he had reviewed all the invoices that had been submitted to AEP for payment from Carroll and each of his companies and had determined that Carroll and CI had fraudulently invoiced and received from AEP $122,703.79, and that Carroll and DDG had fraudulently invoiced and received from AEP $127,142.97.
{¶ 5} Toler stated in his affidavit that Carroll, CI and DDG had participated in the conspiracy, and he submitted a list of all the fraudulent invoices submitted by him to AEP on behalf of Carroll, CI and DDG.
{¶ 6} Klusmeier stated in his affidavit that Carroll had never made any effort to settle the claims against him and his companies with Arkwright. Klusmeier also stated that Carroll had appeared unremorseful over his participation in the conspiracy.
{¶ 7} Carroll, neither for himself nor for his companies, ever responded to the motion for summary judgment. On July 9, 2001, the trial court granted summary judgment in favor of Arkwright and directed Arkwright's counsel to submit a proposed judgment entry. Shortly thereafter, Carroll retained counsel. Carroll, DDG, and CI filed an objection to Arkwright's proposed judgment entry, challenging both their liability and the amount of damages. During oral arguments to this court, both parties stated that there was a hearing on the objections in the trial court's chambers, but that it had not been recorded for our review.
{¶ 8} From the record, it appears that during this hearing in chambers it was determined that Carroll had made two payments to Arkwright, one in 1997 and one in 2001, as part of the court-ordered restitution related to Carroll's sentence for mail fraud. Once this amount was credited to the appropriate parties, summary judgment was entered against Carroll and CI and Carroll and DDG in the adjusted amount, which also included pre-judgment interest. On appeal, Carroll and his companies now assert three assignments of error.
{¶ 9} In their first assignment of error, Carroll and his companies assert that the trial court erred in entering summary judgment in favor of Arkwright when there were genuine issues of material fact in dispute. Pursuant to Civ.R. 56(C), summary judgment is proper if no genuine issue of material fact remains to be litigated, the moving party is entitled to judgment as a matter of law, and it appears from the evidence, viewed most strongly in favor of the nonmoving party, that reasonable minds can come to only one conclusion.[1] Appellate review of the entry of summary judgment is de novo, using the same standard applied by the trial court.[2]
{¶ 10} The party seeking summary judgment initially bears the burden of informing the trial court of the basis for the motion and identifying portions of the record demonstrating an absence of genuine issues of material fact as to the essential elements of the nonmoving party's claims.[3] The movant must point to some evidence in the record of the type listed in Civ.R. 56(C) to support its motion.[4] Once this burden is satisfied, the nonmoving party has the burden, under Civ.R. 56(E), to offer specific facts showing a genuine issue for trial.[5]
The nonmoving party may not rest upon the mere allegations and denials in the pleadings but instead must point to or submit some evidentiary material that shows that a genuine dispute over the material facts exists.[6]
{¶ 11} Here, Arkwright supported its summary-judgment motion with three affidavits demonstrating that a criminal scheme to defraud Arkwright's insured AEP had occurred, and that Carroll and his two companies were involved in the conspiracy and had received monetary gain. Further, the affidavits indicated the specific amount of damages Arkwright had suffered from the fraudulent activity of Carroll, CI and DDG. As Arkwright satisfied its burden to show that there were no material facts at issue, the burden then switched to Carroll, CI and DDG to show that material facts were in dispute. But, pursuant to Civ.R. 56(E), they could not merely rely on their pleadings. Instead, they had to introduce or point to some evidence demonstrating a disputed material fact. They did not do so.
{¶ 12} Carroll argues that he and his companies did present evidence to show that there was a dispute regarding the amount of damages owed. During the hearing on the objections to Arkwright's proposed judgment entry, Carroll's counsel provided proof that Carroll had made two court-ordered payments to the government that were later transferred to Arkwright on Carroll's behalf. Arkwright verified this information, adjusted the amount of damages, and resubmitted a modified judgment entry. Arkwright did not dispute that Carroll had made these payments once it was able to verify that it had actually received the money. Although Carroll, CI and DDG still insisted that the amount of damages was not accurate, they did not present any type of evidence to demonstrate that they had made any further payments to Arkwright.
{¶ 13} Accordingly, as there was no properly supported dispute over any material facts, summary judgment was properly entered in favor of Arkwright. The first assignment of error is overruled.
{¶ 14} In its second assignment of error, Carroll asserts that the trial court abused its discretion in entering summary judgment against him and his companies. Specifically Carroll argues that the trial court abused its discretion in failing to hold a hearing on the objections to the proposed judgment entry. Carroll maintains that if this hearing had been held, his counsel would have moved for leave to file a response to the summary-judgment motion and would have had Klusmeier's affidavit stricken from the record, as it was inappropriate for Arkwright's counsel to submit evidence regarding substantive issues in the case. But we note that, according to each party's statements at oral argument, a hearing or discussion, albeit informal, was held in the trial court's chambers on the objections to the proposed judgment entry. We can find no rule of law that states that the trial court must hold a formal evidentiary hearing on objections to a proposed judgment entry. If the trial court is satisfied that the judgment entry correctly reflects its decision, the trial court may order that the entry be journalized.[7] Accordingly, the trial court did not abuse its discretion in not holding a formal evidentiary hearing on the objections.
{¶ 15} Carroll next argues that the trial court's failure to provide special consideration to him, as a pro se defendant, was an abuse of discretion, as courts should be lenient towards pro se litigants. We disagree. This court has held that "pro se litigants are bound by the same rules and procedures as those litigants who retain counsel. They are not to be accorded greater rights and must accept the results of their own mistakes and errors."[8]
{¶ 16} Carroll cites to Kellico, Inc. v. Songer[9] andAl-Marayati v. Cappelletty[10] to support the contention that Ohio appellate courts have a history of reversing summary judgments entered against pro se litigants where a procedural defect has occurred, such as failing to respond to a summary-judgment motion within the appropriate time. But, in both of these cases, the litigants had moved for permission to answer or to respond out of time, and the trial court had denied those motions. Here, Carroll and his companies, after retaining counsel, never moved for leave to file a response out of time, or at least there is nothing in the record that indicates that they did so.
{¶ 17} Further, in Al-Marayati, the decision to reverse the entry of summary judgment to allow the appellant to respond out of time was limited to the circumstances of that case, where the trial court had originally denied the motion for summary judgment and, based on that decision, had denied the appellant's request to respond out of time. At a later date, the appellee had moved for reconsideration, and the trial court had then granted summary judgment without giving the appellant the opportunity to respond.[11] In Kellico, Inc., the decision to reverse the entry of summary judgment was similarly limited to the circumstances of that case, where the pro se litigant sought counsel after she had responded to the complaint and her counsel moved for leave to file an answer out of time on the same day that the plaintiff moved for summary judgment.[12]
{¶ 18} Unlike the cases cited by Carroll, Carroll, CI, and DDG never moved in this case for leave to file a response to the summary-judgment motion out of time, nor did they attempt to seek counsel until after the court had rendered a decision. Accordingly, the trial court did not abuse its discretion in failing to afford special consideration to Carroll, CI and DDG because they were pro se litigants.
{¶ 19} Carroll also appears to argue that the trial court abused its discretion by accepting the Klusmeier affidavit as evidentiary support for summary judgment. Assuming it was error to consider Klusmeier's affidavit, as it was Arkwright's counsel offering substantive evidence on issues in the summary-judgment motion, we hold that it was harmless error. There was never a motion to strike the affidavit, there is nothing in the record that contradicts or contests the affidavit, and the other affidavits offered as evidence clearly supported the trial court's grant of summary judgment. Accordingly, the trial court did not abuse its discretion in considering Klusmeier's affidavit.
{¶ 20} The second assignment of error is overruled.
{¶ 21} In the third assignment of error, Carroll maintains that the trial court erred in awarding prejudgment interest to Arkwright when the court failed to hold a hearing on that issue, and when there was insufficient evidence to demonstrate that Arkwright had attempted to negotiate a settlement in good faith, but that Carroll, CI and DDG had not.
{¶ 22} R.C. 1343.03(C) requires that a hearing be held prior to awarding prejudgment interest. But the statute does not mandate that the hearing be conducted in a particular manner. As we noted earlier, an informal hearing was held in the trial court's chambers on the objections to the proposed judgment entry. Carroll's memorandum in support of his objections to the proposed judgment entry addressed the award of prejudgment interest. Under these circumstances, we may presume that the informal hearing in chambers addressed the propriety of such an award. But even if it did not, we note that it is within the trial court's discretion to choose to have a non-oral hearing.[13] Carroll's memorandum in support of the objections to the proposed judgment entry and Arkwright's reply memorandum contained a discussion pertaining to the award of prejudgment interest. As a non-oral hearing on the basis of the motion papers was sufficient to satisfy the hearing requirement of the statute, we are not persuaded that the trial court failed to hold a hearing prior to awarding prejudgment interest.[14]
{¶ 23} With respect to Carroll's argument that there was no evidence to demonstrate that Carroll, CI, and DDG had failed to make a good-faith effort to settle, we are unpersuaded. Arkwright submitted its counsel's uncontested affidavit stating that, in the previous five years, Carroll, on behalf of himself and his companies, had never made any effort to settle this matter, and that Carroll had never responded to settlement overtures from Arkwright. Because there was some competent, credible evidence on which the trial court could base its award of prejudgment interest, we hold that the trial court did not abuse its discretion in determining that Carroll and his companies had failed to make a good-faith effort to settle.[15]
{¶ 24} Therefore, the third assignment of error is overruled, and the judgment of the trial court is affirmed.
Judgment affirmed.
Hildebrandt, P.J., Gorman and Winkler, JJ.
[1] Temple v. Wean United, Inc. (1977), 50 Ohio St.2d 317, 327,364 N.E.2d 267.
[2] McKay v. Cutlip (1992), 80 Ohio App.3d 487, 491,609 N.E.2d 1272.
[3] Dresher v. Burt (1996), 75 Ohio St.3d 280, 293, 662 N.E.2d 264.
[4] Id.
[5] Id.
[6] Henkle v. Henkle (1991), 75 Ohio App.3d 732, 735,600 N.E.2d 791.
[7] See Loc.R. 17(A) of Hamilton County Court of Common Pleas.
[8] Meyers v. First Natl. Bank of Cincinnati (1981), 3 Ohio App.3d 209,210, 444 N.E.2d 412.
[9] (May 3, 1999), 4th Dist. No. 97-CA-56.
[10] (Dec. 3, 1999), 6th Dist. No. L-98-1395.
[11] Al-Marayati, supra.
[12] Kellico, Inc., supra.
[13] Bitzer v. Lincoln Elec. Co. (1990), 67 Ohio App.3d 53, 59,585 N.E.2d 978, citing Laverick v. Children's Hosp. Medical Ctr.of Akron (1988), 43 Ohio App.3d 201, 540 N.E.2d 305.
[14] Id.
[15] See Marous v. Ohio Bell Tel. Co. (1992), 80 Ohio App.3d 306,609 N.E.2d 192; Fultz v. St. Clair, 11th Dist. No. 99-CV-000650, 2002-Ohio-7142.