Faith CUMMINS, Administratrix of the
Estate of Monty R. Cummins,
Plaintiff–Appellee,

v.

JGB INDUSTRIES, INC., doing busi-
ness as Baker Equipment Engineer-
ing Company, et al., Defendants,

and

Henkels & McCoy, Inc., Defendant–
Appellant.

No. 99–3462.

United States Court of Appeals,
Sixth Circuit.

Feb. 7, 2001.

Before BOGGS and SUHRHEINRICH, Circuit Judges; ALDRICH, District Judge.[*]

PER CURIAM.

Defendant Henkels & McCoy, Inc. ("Henkels") appeals from a denial of its post-trial motion for judgment as a matter of law or for new trial, pursuant to Federal Rules of Civil Procedure 50(b) and 59, on the wrongful death claim brought by Plaintiff, Faith Cummins, administratrix of the Estate of Monty R. Cummins ("Decedent"). The suit stemmed from Cummins' head-first fall of twenty to thirty-five feet from a bucket truck used to pull wire on electrical lines after the bucket's compensating chain broke. Plaintiff alleged an intentional tort under an exception to Ohio's workers' compensation statute. Henkels asserts that the district court erred because there was insufficient evidence as a matter of law to show an intentional tort. Alternatively, Henkels argues that the court erred when it prohibited use during trial of the word "intentional" by counsel, excluded evidence, and instructed the jury. Henkels also argues, alternatively, that the court erred when it awarded prejudgment interest to Plaintiff. Because we REVERSE on Henkels' first ground for relief, we do not reach Henkels' alternative arguments.

## I.

Plaintiff initially sued the manufacturer of the bucket truck only, but several months later she added an intentional tort claim against decedent's employer, Defendant Henkels. The manufacturer and Henkels moved for summary judgment, but these motions were denied. Later, the manufacturer settled, and the claim against Henkels proceeded to trial. Henkels moved for directed verdict at the close of Plaintiff's proofs and at the close of all evidence. The court denied these motions. The jury awarded Plaintiff $3,429,649.00. Plaintiff then moved for prejudgment interest, which was granted. Henkels then filed a motion for judgment as a matter of law, or, in the alternative, for new trial. *See* Fed.R.Civ.P. 50(b) and 59. These motions were also denied.

---

[*] The Honorable Ann Aldrich, United States District Judge for the Northern District of Ohio, sitting by designation.

At trial, the parties stipulated, among other things, that the bucket truck was delivered to Henkels and was put into service in mid-July 1989, that the compensating chain was never replaced prior to September 26, 1994, the date Cummins died, and that the bucket truck manual states grease should not be used on the chain. They also stipulated that the chain contained galling on the interior of the bushings, and that the manufacturer issued a maintenance bulletin around June 30, 1986, that was sent to Henkels by certified mail and was received on July 21, 1986.

On September 26, 1994, a Henkels foreman assigned a crew that included the decedent to a job that required use of the bucket truck. The foreman specifically assigned the decedent to use that particular truck, but he indicated that he did not personally assign which crew member would pull the wire. The bucket was 20 to 35 feet in the air when there was a loud "bam," it fell, the bucket landed in the cradle of the truck, and Cummins hit the pavement head-first. The bucket fell because the compensating chain broke.

Experts testified that pins in the chain showed fatigue failure; that there were turned pins, seized rollers, and galling from lack of lubrication; that the turned pins would have been revealed in a routine inspection; and that the turned pins were present before the chain failure. Other experts testified that the galling and pin fractures were caused by heavy loading or overloading, and that lack of lubrication did not cause or contribute to the fatigue failure.

A sticker on the unit, the operating manual, and a maintenance bulletin sent to Henkels by certified mail recommended various kinds of maintenance: (1) lubrication and inspection every thirty days, (2) using "SAE 20 nondetergent motor oil," and (3) not using grease to lubricate the chain. These materials also warned that inadequate lubrication "will cause premature chain wear and possible chain breakage" as well as "galling and corrosion of the chain pins, and can cause breakage of the pins" so that the boom falls or the bucket tilts, causing "serious injury and/or death." The bulletin further warned that "[b]uildup should never be permitted to accumulate" and "must be" periodically removed by cleaning. The materials further recommended a major inspection and replacement of cables after every five years or 5,250 hours of operation and warned the user: "DO NOT exceed the service life period of the chain. The maximum service life of a compensating chain should never exceed five years."

Two mechanics employed by Henkels received training and read these recommendations and requirements. They testified that they regularly inspected and lubricated the chain. They denied greasing the chain, although both mechanics acknowledged they used a spray lubricant called "Core," which is not a 20–weight oil,[1] and one mechanic acknowledged using 30–weight nondetergent oil. It was conceded that the chain had not been replaced in five years and three months, which was longer than the manufacturer's recommended maximum service life of five years. One mechanic also testified that he knew that chain breakage could cause "catastrophic problems," including the injury or death of the bucket occupant. He also indicated that he never cleaned the chains and that after the accident he got filthy

---

1. It is unclear from the record whether Core is grease. It is also unclear whether the substance found on the chain was actually oil or grease, although it was described in both ways.

and "black up to [his] elbows" removing the chain. He also conceded that the monthly schedule of inspection and lubrication was more consistent after Cummins' death. However, other testimony indicated that this mechanic previously had said he did not have anything to do with service or work on the chain. The mechanics kept records of services performed, such as oil changes, but the records did not note lubrication of the compensating chain, and there were gaps of months between some service entries. One mechanic did not specifically recall servicing the unit on September 20, 1994, although his records reflected he serviced and oiled the unit on that date.

The mechanics conceded that oiling the chain was more important than replacing oil and air filters because of the risk of death. The mechanics also admitted that no records were kept on oiling the chain as similar records were kept for changing the engine oil, filters, and other parts. In addition, there were no records of the hours the bucket truck was used. However, the engine must be running for the boom to operate. It was estimated that the boom might be in operation 90% of the time. The engine meter for the unit recorded 9,490 hours of use. Using these figures and assumptions, the chain could have been used for more than 8,500 hours. This exceeds the recommended maximum use of 5,250 hours.

Management was aware of the warnings on the sticker prior to the incident, but compensating chains were not discussed at weekly safety meetings. Also, the crew foreman did not require daily inspection of the chain and did not think the company had such a policy. He also did not think the work crews performed maintenance or inspection of the unit and did not know whether the mechanics inspected the chains every time they came out. The foreman did not recall any problems with the unit being reported the day of the incident or the day before.

## II.

▮▮▮ Henkels moved for judgment as a matter of law pursuant to Fed.R.Civ.P. 50(b). In diversity cases, this Court reviews challenges under Rule 50 based on insufficient evidence under the forum state's standard of review, and reviews legal questions *de novo. See K & T Enters., Inc. v. Zurich Ins. Co.*, 97 F.3d 171, 176 (6th Cir.1996). In Ohio, when deciding a motion for directed verdict, the evidence and all permissible inferences must be strongly construed in favor of the nonmovant, and the court may not consider the weight of the evidence or the witnesses' credibility; the motion may be granted only if "there can be but one reasonable conclusion as to the proper verdict." *Cantrell v. GAF Corp.*, 999 F.2d 1007, 1014–15 (6th Cir.1993).

▮▮▮ The intentional tort exception requires proof beyond negligence and recklessness. The exception is a narrow one and the standard is high because "conduct falling short of an actual intent to injure is insufficient to overcome the exclusivity provisions of the workers' compensation Acts." *Van Fossen v. Babcock & Wilcox Co.*, 36 Ohio St.3d 100, 522 N.E.2d 489, 500 (Ohio 1988). Moreover, "[a]n expansive interpretation of the intentional tort exception would thwart the basic purposes of the statutory scheme by eroding the exclusivity of both the liability and recovery provided by workers' compensation." *Id.* at 501. Thus, to establish an intentional tort under the exception to the Ohio workers' compensation statute, the plaintiff must demonstrate:

(1) knowledge by the employer of the existence of a dangerous process, procedure, instrumentality or condition within

its business operation; (2) knowledge by the employer that if the employee is subjected by his employment to such dangerous process, procedure, instrumentality or condition, then harm to the employee will be a substantial certainty; and (3) that the employer, under such circumstances, and with such knowledge, did act to require the employee to continue to perform the dangerous task.

*Cantrell,* 999 F.2d at 1015 (quoting *Fyffe v. Jeno's Inc.,* 59 Ohio St.3d 115, 570 N.E.2d 1108, 1109 (Ohio 1991), syllabus ¶ 1, modifying *Van Fossen,* 522 N.E.2d at 491, syllabus ¶ 5).

To establish an intentional tort of an employer, proof beyond that required to prove negligence and beyond that to prove recklessness must be established. Where the employer acts despite his knowledge of some risk, his conduct may be negligence. As the probability increases that particular consequences may follow, then the employer's conduct may be characterized as recklessness. As the probability that the consequences will follow further increases, and the employer knows that injuries to employees are certain or substantially certain to result from the process, procedure or condition and he still proceeds, he is treated by the law as if he had in fact desired to produce the result. *However, the mere knowledge and appreciation of a risk—something short of substantial certainty—is not intent.*

*Id.* (quoting *Fyffe,* 570 N.E.2d at 1110, syllabus ¶ 2, modifying *Van Fossen,* 522

N.E.2d at 491–92, syllabus ¶ 6) (emphasis added).[2]

Here, the district court denied Henkels' post-trial motions without explanation. Henkels asserts the court erred because there was insufficient evidence as a matter of law for the case to be submitted to the jury. In particular, Henkels argues that the district court allowed plaintiff's claim of an intentional tort to go to the jury solely on evidence that Henkels did not require record-keeping to ensure compliance with the manufacturer's recommended maintenance for the compensating chain. Henkels also argues there was no evidence that it knew (1) the chain was worn or defective, (2) there were any problems with the unit, (3) mechanics were not performing the recommended maintenance and inspections, or (4) any chain had ever previously broken. Henkels thus asserts that it was not substantially certain injury would result from use of the unit, and, at most, it appreciated the risk of chain failure.

■ We are not unmindful that "a reviewing court should not lightly overturn a jury verdict ... particularly ... a jury's findings on an issue, such as intent, which is so intimately bound to the interpretation of the facts and the demeanor of witnesses." *Pratt v. Nat'l Distillers & Chem. Corp.,* 853 F.2d 1329, 1337 (6th Cir.1988) (quoting *Jones v. VIP Development Co.,* 15 Ohio St.3d 90, 472 N.E.2d 1046, 1052 (Ohio 1984) (quotations omitted)); *see also Gillham v. Admiral Corp.,* 523 F.2d 102, 109 (6th Cir.1975). However, not all questions

---

**2.** The Ohio legislature enacted Ohio Rev.Code § 2745.01 (regarding an employer's liability for intentional torts) on November 1, 1995, in order to supersede the effect of decisions such as *Fyffe,* but the statute was not expressly made retroactive and, because plaintiff's claim was filed prior to the effective date of the statute, on April 26, 1995, the statute is

not applicable to this case. *See Abbott v. Jarrett Reclamation Serv., Inc.,* 132 Ohio App.3d 729, 726 N.E.2d 511, 521 (Ohio Ct. App.1999). In any event, the Ohio Supreme Court subsequently held the statute unconstitutional. *See Johnson v. BP Chems., Inc.,* 85 Ohio St.3d 298, 707 N.E.2d 1107, 1114 (Ohio 1999). Therefore, *Fyffe* remains the standard.

should be put to a jury. Such is the case here.

■ There was sufficient evidence to show the presence of a "dangerous process, procedure, instrumentality or condition" and that Henkels had knowledge of it. Specifically, the record showed Henkels knew the compensating chain required certain maintenance and adherence to a replacement schedule because its employees had read the special bulletin, the operating manual, and the warning stickers. Henkels also did not have procedures in place to ensure compliance with the manufacturer's recommendations. Moreover, Henkels' employees did not properly adhere to the service schedule. Further, the chain was not replaced as recommended by the manufacturer. Finally, an expert indicated that a routine inspection would have revealed the turned pins.

Nevertheless, on this record, Henkels did not know that harm to Cummins was a substantial certainty under the circumstances. The facts adduced at trial indicate knowledge and appreciation only of some risk of harm to employees who were assigned to the bucket truck. But Plaintiff made no showing that Henkels knew with substantial certainty that an accident would occur resulting in Cummins' death or injury, as required by *Fyffe*.

This case lacks the certainty of injury present in other cases that affirmed jury awards for the plaintiffs. For example, unlike *Cantrell*, this case is devoid of the employer's pervasive knowledge of asbestos exposure, prior deaths and disease in numerous employees, the company's purposeful withholding of its knowledge of asbestosis from employees, and its conscious disregard for employee health. *See Cantrell*, 999 F.2d at 1015. This case is also unlike the facts of *Pratt*, where there were similar prior accidents, the employees were not told of explosion hazards, there was active concealment of explosion hazards, and supervisors stated the chemical process was safe but gave no specific formula so that employees were required to guess the amount of chemical ingredients that were to be used in the manufacturing process. *See Pratt*, 853 F.2d at 1331–33. Likewise, this case does not involve the sort of active misrepresentation of the degree of danger to employees posed by acid fumes, assurances of workplace safety, and knowledge that the fumes were being recirculated into the workplace. *See Jones*, 472 N.E.2d at 1049, 1053.

Instead, this case is factually closer to *Pariseau v. Wedge Prods., Inc.*, 36 Ohio St.3d 124, 522 N.E.2d 511, 515 (Ohio 1988) and *Sanek v. Duracote Corp.*, 43 Ohio St.3d 169, 539 N.E.2d 1114, 1117 (Ohio 1989). Both cases involved omissions by employers that the Ohio Supreme Court found did not rise to the level of intentional misconduct. In *Pariseau*, a punch press came down onto the plaintiff's hands when restraint guards failed because of an improper adjustment and the press repeated due to overheated brakes. *See id.* at 512, 514–15. The Ohio Supreme Court held that these conditions resulted from negligence, rather than intentional misconduct and reinstated the judgment, notwithstanding the verdict, for the employer. *See id.* at 515–16. Likewise, in *Sanek*, a plaintiff lost his arm when an employer failed to provide guards on an industrial mixer. *See id.* at 1115–16. The Ohio Supreme Court reversed the denial of the employer's motion for directed verdict, emphasizing that the workplace involves dangers because "management fails to take corrective action, institute safety measures, or properly warn the employees of the risks involved. Such conduct may be characterized as gross negligence or wantonness on the part of the employer.

However, ... such conduct should not be classified as an 'intentional tort....' " *Id.* at 1117.

On the facts adduced at trial, no reasonable person could find that Henkels knew with the requisite degree of certainty that harm to Cummins was bound to occur. Instead, the conditions that led to Cummins' death were the result of negligence or even recklessness. Thus, the matter was improperly submitted to the jury.

### III.

Accordingly, for the foregoing reasons, we REVERSE the district court's order denying Henkels' motion for judgment as a matter of law and REMAND for entry of an order consistent with this opinion.